IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————————

No. 23-4693

—————————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ARBAB SALEEM,

*Defendant – Appellant.*

—————————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Frank D. Whitney, District Judge*

—————————————

BRIEF OF THE UNITED STATES

—————————————

Dena J. King
United States Attorney

Julia K. Wood
Assistant United States Attorney
United States Attorney's Office
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................iii

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED ...............................................................................1

STATEMENT OF THE CASE ..................................................................2

       A.    Saleem possesses an unregistered short-barreled shotgun and an unregistered silencer, which police find after responding to a domestic-violence call ...................................2

       B.    The district court sentences Saleem to 18 months in prison .6

SUMMARY OF THE ARGUMENT .........................................................7

ARGUMENT

I.    The district court properly determined that the statute requiring registration of firearms is constitutional as to short-barreled shotguns ........................................................................9

       A.    Standard of Review ..................................................................9

       B.    Discussion..................................................................................9

              1.    The Supreme Court's decision in *United States v. Miller* forecloses Saleem's challenge to the registration requirement for short-barreled shotguns ...................10

              2.    The Second Amendment does not protect the right to possess an unregistered short-barreled shotgun .......17

i

        a.     The plain text of the Second Amendment does not cover possessing an unregistered short-barreled shotgun ............................................................... 18

        b.     The registration requirement is consistent with the historical tradition of firearm regulation ..... 24

II.   The district court properly determined that the statute requiring registration of firearms is constitutional as to silencers .............. 28

   A.    Standard of Review ............................................................. 28

   B.    Discussion ................................................................................. 29

      1.    The plain text of the Second Amendment does not cover possessing an unregistered silencer ............................ 29

        a.     Silencers are not "arms" within the meaning of the Second Amendment ...................................... 30

        b.     Even if they are arms, silencers are not in common use for lawful purposes ......................... 34

        c.     The registration requirement does not "infringe" any right to bear a silencer ................................ 38

      2.    The registration requirement is consistent with the historical tradition of firearm regulation .................. 39

CONCLUSION ....................................................................................... 41

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
        ORAL ARGUMENT ........................................................... 42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## <u>Cases</u>

*Dist. of Columbia v. Heller*,
　554 U.S. 570 (2008) ................................................................. passim

*Ezell v. City of Chicago*,
　651 F.3d 684 (7th Cir. 2011) ......................................................... 32, 33

*Fyock v. Sunnyvale*,
　779 F.3d 991 (9th Cir. 2015) ............................................................. 30

*Johnson v. United States*,
　576 U.S. 591 (2015) ............................................................................ 19

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
　597 U.S. 1 (2022) ..................................................................... passim

*Robertson v. Baldwin*,
　165 U.S. 275 (1897) ............................................................................ 25

*State v. Langford*,
　10 N.C. 381 (N.C. 1824) .................................................................... 24

*Teixeira v. Cnty. of Alameda*,
　873 F.3d 670 (9th Cir. 2017) ........................................................ 25, 26

*United States v. Artez*,
　290 F. App'x 203 (10th Cir. 2008) ..................................................... 16

*United States v. Bolatete*,
　977 F.3d 1022 (11th Cir. 2020) .......................................................... 36

iv

*United States v. Cox*,
    906 F.3d 1170 (10th Cir. 2018) ......................................... 16, 20, 22, 31

*United States v. Fincher*,
    538 F.3d 868 (8th Cir. 2008) ............................................................. 16

*United States v. Fortes*,
    141 F.3d 1 (1st Cir. 1998) ................................................................. 20

*United States v. Hasson*,
    2019 WL 4573424 (D. Md. Sept. 20, 2019) ................................... 31, 33

*United States v. Hasson*
    26 F.4th 610 (4th Cir. 2022) ............................................................. 31

*United States v. Marzzarella*,
    614 F.3d 85 (3d Cir. 2010) ................................................................ 20

*United States v. McCartney*,
    357 F. App'x 73 (9th Cir. 2009) ........................................................ 35

*United States v. McLaurin*,
    764 F.3d 372 (4th Cir. 2014) ............................................................ 20

*United States v. Miller*,
    307 U.S. 174 (1939) ................................................................. passim

*United States v. Pruess*,
    703 F.3d 242 (4th Cir. 2012) ......................................................... 9, 28

*United States v. Ramadan*,
    2023 WL 6634293 (6th Cir. Oct. 12, 2023) ........................................ 35

*United States v. Stepp-Zafft*,
    733 F. App'x 327 (8th Cir. 2018) ...................................................... 16

*United States v. Thompson/Ctr. Arms Co.*,
    504 U.S. 505 (1992) ......................................................... 25, 27, 33, 40

## Constitutional and Statutory Authority

U.S. Const. amend. II ................................................................. 11

18 U.S.C. § 921(a) ................................................................. 4, 5, 30

18 U.S.C. § 3231 ....................................................................... 1

26 U.S.C. ch. 53 ....................................................................... 22

26 U.S.C. § 5845(a) ........................................................... 4, 5, 10, 30

26 U.S.C. § 5861(d) ............................................................. 9, 10, 28

26 U.S.C. § 5871 ............................................................... 4, 5, 6

28 U.S.C. § 1291 ....................................................................... 1

## Other Authorities

4 William Blackstone, *Commentaries on the Laws of England* 148 ...... 24

*Maxim Bans Gun Silencer*, N.Y. Times, May 8, 1930, at 27 .................. 21

Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55 (2017) ... 25, 26, 39

Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 Law & Contemp. Probs. 231 (2020) ....................................................................... 34

Webster's 1828 American Dictionary of the English Language ............ 21

vi

## JURISDICTIONAL STATEMENT

Arbab Saleem appeals his conviction after pleading guilty to possessing an unregistered short-barreled shotgun and an unregistered silencer.   The United States District Court for the Western District of North Carolina (Hon. Frank D. Whitney, J.) had jurisdiction under 18 U.S.C. § 3231.   The court entered judgment on October 19, 2023.   J.A. 451.   Saleem filed a timely notice of appeal of his conviction on November 1, 2023.   J.A. 457.   This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## ISSUES PRESENTED

1.      The National Firearms Act requires registration of certain firearms, including short-barreled shotguns.   The Supreme Court held in *United States v. Miller*, 307 U.S. 174, 178 (1939), that the Act did not violate the Second Amendment because short-barreled shotguns are not in common use for lawful purposes and are therefore not protected. Did the district court properly deny Saleem's motion to dismiss his charge for possessing an unregistered short-barreled shotgun?

2.      The Act also requires registration of silencers.    The Second Amendment does not protect devices that are not arms, nor does it protect dangerous and unusual arms.    The registration requirement does not "infringe" any right to have a silencer, and it is consistent with the historical tradition of regulating firearms.    Did the district court properly deny Saleem's motion to dismiss his charge for possessing an unregistered silencer?

## STATEMENT OF THE CASE

**A.      Saleem possesses an unregistered short-barreled shotgun and an unregistered silencer, which police find after responding to a domestic-violence call.**

In April of 2020, police responded to a call for help from Saleem's longtime girlfriend, S.G.    J.A. 512, J.A. 547.    When they arrived, S.G. told them that she and Saleem had been drinking alcohol and began fighting.    J.A. 547.    She said that Saleem hit her and strangled her with both hands.    J.A. 547.    She then stabbed Saleem with a knife in the left shoulder.    J.A. 547.    Saleem shot a gun several times toward her feet.    J.A. 547.    Police reported seeing signs of manual

2

strangulation on S.G., including a red mark on the left side of her neck and petechial hemorrhaging under her eyes.   J.A. 547.

After S.G. arrived at a hospital for treatment, she stopped cooperating with medical staff.   J.A. 547.   Although she cooperated with police during the initial investigation, she eventually recanted her statements about the incident and said that her alcoholism and mental illness caused her to "lash[] out" at Saleem by pulling his beard hair. J.A. 512, J.A. 547.   Saleem denied that he "assaulted, strangled, or harmed her in any way" and claimed that he fired a revolver into the door of an empty room because he was "[d]esperate to stop" S.G.'s attack.   J.A. 504.

After obtaining a search warrant to recover the gun involved in the incident, police found a silencer and a homemade assault-rifle-style pistol with a vertical grip in Saleem's BMW.   J.A. 593–594.   They also found a Stevens model 94 16-gauge weapon made from a shotgun.   J.A. 594.   It appeared that someone had cut the barrel and stock.   J.A. 594. Saleem told officers that he ordered the silencer from the internet and that he had cut the barrel of the shotgun about three months before

3

because he "thought it would look cool."   J.A. 594.   He said that he had
begun making guns because unpaid traffic tickets prevented him from
getting a permit to buy guns.   J.A. 594.   An ATF agent determined
that the shotgun met the definition of a weapon made from a shotgun in
18 U.S.C. § 921(a)(6).   J.A. 594.   The ATF's Firearms Technology
Criminal Branch determined that the silencer met the definitions in 18
U.S.C. §§ 921(a)(25)[1] and 921(a)(3)(C) and 26 U.S.C. § 5845(a)(7) and
that the assault-rifle-style pistol qualified as "any other weapon"
constituting a firearm as defined in 26 U.S.C. § 5845(a)(5) because it
was concealable.   J.A. 595.   The weapon was not a pistol because it
had been modified.   J.A. 595.   None of the firearms was registered.
J.A. 595.

A federal grand jury indicted Saleem and charged him with
possessing an unregistered short-barreled shotgun, 18 U.S.C.
§ 921(a)(6) and 26 U.S.C. §§ 5845(a)(2), 5861(d) and 5871; possessing an
unregistered silencer, 18 U.S.C. §§ 921(a)(3)(C) and 921(a)(25) and 26

---

[1] At the time of Saleem's indictment, the definition of silencer was
codified at 18 U.S.C. § 921(a)(24).   The current citation is used for ease
of reference.

U.S.C. §§ 5845(a)(7), 5861(d) and 5871; and possessing an unregistered

manufactured assault-rifle-style firearm, 18 U.S.C. §§ 921(a)(3)(A) and

921(a)(3)(B) and 26 U.S.C. §§ 5845(a)(5) and 5845(e), 5861(d) and 5871.

J.A. 11.   Seven months later, Saleem entered a guilty plea without a

plea agreement to possessing the unregistered silencer and possessing

the unregistered short-barreled shotgun.   J.A. 43.

The probation office prepared a presentence report concluding

that the Sentencing Guidelines advised imprisonment of 41 to 51

months based on a total offense level of 21 and a criminal history

category of II.   J.A. 610.   The offense level included a two-offense-level

increase because the crime involved three to seven firearms, a four-

offense-level increase because Saleem possessed the firearms in

connection with another felony — assault by strangulation — and a

three-offense-level decrease for acceptance of responsibility.   J.A. 602–

603.   The government also sought a two-level enhancement for

possession of a "destructive device," contending that the short-barreled

shotgun qualified.   J.A. 620–621.   Saleem objected to the

enhancements, arguing that the addition of a forward grip to the

otherwise-legal pistol did not convert it into an illegal firearm, that
Saleem had not possessed the firearms in connection with any other
felony, and that the shotgun did not qualify as a destructive device.
J.A. 597–600, J.A. 618–619, J.A. 280–288, J.A. 623–625.   He also
objected to the statement of relevant conduct because it painted him as
the "aggressor" in the incident with S.G., despite the fact that the
assault-related charges against him were dismissed.   J.A. 601.

## B.   The district court sentences Saleem to 18 months in prison.

The district court, Honorable Frank D. Whitney, presiding,
conducted Saleem's sentencing hearing.   J.A. 296–449.   The court
declined to apply the enhancements for possessing the firearm in
connection with a felony offense, J.A. 360, and possessing three to eight
firearms, J.A. 391.   It found the shotgun qualified as a destructive
device for purposes of the two-level enhancement.   J.A. 410.   Based on
a total offense level of 17 and a criminal history category of II, the
Guidelines range was 27 to 33 months.   J.A. 410–411.   Saleem
requested a downward variance, and the prosecutor agreed a downward

variance might be appropriate.    J.A. 432–433.    The court varied downward and sentenced Saleem to 18 months in prison.    J.A. 443.

## SUMMARY OF THE ARGUMENT

1.    The district court properly denied Saleem's motion to dismiss the charge that he possessed an unregistered short-barreled shotgun.    The Supreme Court's decision in *Miller* forecloses Saleem's argument that the National Firearms Act's registration requirement violates the Second Amendment.    *Miller* held that the Second Amendment did not protect short-barreled shotguns because they were not in common use.    And the Supreme Court reemphasized *Miller*'s holding and historical analysis in *Dist. of Columbia v. Heller*, 554 U.S. 570, 627 (2008), and *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 21 (2022).    Even if this Court considers the issue anew, the plain text of the Second Amendment does not cover short-barreled shotguns because they are not in common use for lawful purposes and the registration requirement does not infringe the right to bear arms. And even if the Second Amendment protects short-barreled shotguns, the registration requirement is consistent with the historical tradition

7

of regulating dangerous and unusual weapons and with the tradition of regulating the sale and taxation of firearms.

2.     The district court also properly denied Saleem's motion to dismiss the count charging him with possessing an unregistered silencer.   The plain text of the Second Amendment does not cover silencers because they are not arms within the meaning of the Second Amendment.   Even if they were arms, the Second Amendment would not protect them because they are not in common use for lawful purposes.   Moreover, the registration requirement does not infringe any right to bear a silencer.   The registration requirement is consistent with the historical tradition of regulating dangerous and unusual weapons and with the tradition of regulating the sale and taxation of firearms.   The registration requirement for silencers therefore does not violate the Second Amendment.

## ARGUMENT

**I.     The district court properly determined that the statute requiring registration of firearms is constitutional as to short-barreled shotguns.**

### A.     Standard of Review

This Court reviews Second Amendment challenges de novo.

*United States v. Pruess*, 703 F.3d 242, 245 (4th Cir. 2012).

### B.     Discussion

The district court properly denied Saleem's motion to dismiss the first count of the indictment because 26 U.S.C. § 5861(d)'s registration requirement for short-barreled shotguns does not violate the Second Amendment.   The Supreme Court's decision in *Miller* held that short-barreled shotguns are not protected by the Second Amendment.   *Miller* forecloses Saleem's challenge.   Even if this Court considers the issue anew, the Second Amendment does not protect short-barreled shotguns because they are not in common use for lawful purposes.   The registration requirement also does not "infringe" the right to bear such arms.   And even if they are protected by the Second Amendment, the

registration requirement is consistent with the historical tradition of firearm regulation and thus is constitutional under *Bruen*.

>    1.    *The Supreme Court's decision in* United States v. Miller *forecloses Saleem's challenge to the registration requirement for short-barreled shotguns.*

The Supreme Court's decision in *Miller* forecloses Saleem's challenge to the registration requirement for short-barreled shotguns. *Miller* remains good law after *Bruen*, and it is dispositive of Saleem's claim.

The National Firearms Act is a comprehensive taxing scheme that regulates the manufacture, sale, and transfer of certain especially dangerous and concealable weapons. Section 5861(d) of the Act makes it a crime to possess "a firearm which is not registered" in the National Firearms Registration and Transfer Record. 26 U.S.C. § 5861(d). The word "firearm" is defined to include certain dangerous weapons, including "a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length." 26 U.S.C. § 5845(a)(2).

The Second Amendment protects the "right of the people to keep and bear Arms."   U.S. Const., amend. II. "Like most rights," the Supreme Court has explained, "the right secured by the Second Amendment is not unlimited."   *Heller*, 554 U.S. at 626.   It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose."   *Id.*   In *Miller*, for example, the Supreme Court upheld the convictions of two men under the National Firearms Act for transporting unregistered short-barreled shotguns in interstate commerce.   307 U.S. at 178.   The Court concluded that short-barreled shotguns were outside the scope of the Second Amendment because they bore no "reasonable relationship to the preservation or efficiency of a well-regulated militia."   *Id.*   When called for service, militiamen "were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Id.* at 179.   The Second Amendment therefore protected only those kinds of arms.

Almost seventy years later, the Court in *Heller* recognized the "important limitation on the right" from *Miller* that "the sorts of

11

weapons protected" by the Second Amendment "were those 'in common use at the time.'" 554 U.S. at 627 (quoting *Miller*, 307 U.S. at 179). In other words, the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*." *Id.* at 625 (emphasis added). That limitation, the Court reasoned, was "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id.* at 627 (internal quotation marks and citations omitted).

More recently, in *Bruen*, the Supreme Court clarified and reiterated the framework for analyzing Second Amendment claims described in *Heller* before holding that New York's discretionary handgun-licensing regime violated the Second Amendment. 597 U.S. at 31. Under the *Bruen* framework, a court must first consider the scope of the Second Amendment. If the Second Amendment's "plain text covers an individual's conduct," the Court explained, "the Constitution presumptively protects that conduct." *Id.* at 24. The government must then justify the regulation "by demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation." *Id.* Only then does the conduct fall outside the Second Amendment's "unqualified command." *Id.* (internal quotation marks and citation omitted).

In elevating the importance of the historical tradition in Second Amendment analysis, *Bruen* also reinforced the limitations on the kinds of protected weapons that *Heller* recognized. It explained that *Heller* found it "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons" that the Second Amendment protects only the "possession and use of weapons that are in common use at the time." *Id.* at 21. As Justice Alito wrote in his concurrence, *Bruen* did not "disturb[]" *Heller*, nor did it "decide anything about the kinds of weapons that people may possess." *Id.* at 72 (Alito, J., concurring). And Justice Kavanaugh noted in concurring that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," including shall-issue handgun-licensing regimes requiring background checks and firearms-safety courses. *Id.* at 81 (Kavanaugh, J., concurring) (quoting *Heller*, 554 U.S. at 636); *see also id.* at 38 n.9 (majority opinion) ("[N]othing in our analysis should be

interpreted to suggest the unconstitutionality" of "shall-issue" licensing regimes, which are "designed to ensure only that those bearing arms in the jurisdiction" are "law-abiding, responsible citizens.").

*Miller*, *Heller*, and *Bruen* foreclose Saleem's challenge to § 5861(d). *Miller* upheld the registration requirement for short-barreled shotguns, reasoning that the shotguns fell outside the scope of the Second Amendment because they were not "in common use" at the time and therefore bore no "reasonable relationship" to the Second Amendment's goal of preservation of a well-regulated militia. *Id.* at 178–79. *Heller* and *Bruen* reiterated *Miller*'s holding, explaining that the right to bear arms is not unlimited and extends "only to certain types of weapons." *Heller*, 554 U.S. at 623; *see also Bruen*, 597 U.S. at 21. *Heller* explicitly read *Miller* to hold that the Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, *such as short-barreled shotguns*." *Heller*, 554 U.S. at 625 (emphasis added). And *Bruen* emphasized that the Court in *Heller* had found it "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons" — the

14

historical approach endorsed by *Bruen* — that the Second Amendment protects the possession only of weapons "in common use at the time." *Bruen*, 597 U.S. at 21. *Miller* remains good law, and it is binding. The district court therefore properly denied Saleem's motion to dismiss the charge for possessing an unregistered short-barreled shotgun.

Saleem declines to address *Miller*'s applicability to this case, instead asserting that the *Bruen* analysis has "not yet been tested" in the context of short-barreled shotguns because neither this Court nor the Supreme Court has "expressly declined to apply Second Amendment protection to short-barreled shotguns since *Bruen*." *Br. of Appellant* 19. *Bruen* explicitly endorsed, however, *Miller*'s holding that the Second Amendment protects the possession and use of weapons that are "in common use at the time." 597 U.S. at 21. What's more, it found *Miller*'s holding "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons." *Id.* *Miller* undertook precisely the historical inquiry that *Bruen* and *Heller* require. Saleem's suggestion that *Bruen* overruled *Miller* is without merit.

15

Although this Court has not considered whether short-barreled shotguns are protected by the Second Amendment, courts that have considered the issue after *Heller* have held that they are not. *See*, *e.g.*, *United States v. Artez*, 290 F. App'x 203, 208 (10th Cir. 2008) (unpublished decision) (noting that the Supreme Court "explicitly stated" in *Heller* that "the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns"); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008) (holding possession of machine gun and unregistered short-barreled shotgun were not reasonably related to militia service under *Heller*). And courts considering analogous short-barreled rifles have also held they are not protected by the Second Amendment. *See, e.g.*, *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018); *United States v. Stepp-Zafft*, 733 F. App'x 327, 329 (8th Cir. 2018) (unpublished decision). Nothing in *Bruen* invalidated those decisions relying on the reasoning of *Miller* and *Heller*, and this Court should join its sister circuits in holding that short-barreled shotguns are not protected by the Second Amendment.

16

      2.      *The Second Amendment does not protect the right to possess an unregistered short-barreled shotgun.*

Even if this Court considers the issue anew under the *Bruen* framework, the Second Amendment does not protect the right to possess an unregistered short-barreled shotgun.   At the first step of the *Bruen* inquiry, the plain text of the Second Amendment does not cover possession of an unregistered short-barreled shotgun for two reasons. First, short-barreled shotguns are not in common use for lawful purposes and therefore fall outside the scope of the Second Amendment's protection.   Second, even if the Second Amendment confers an individual right to possess a short-barreled shotgun, the requirement that the owner register his shotgun does not "infringe" the right to bear that arm within the meaning of the Second Amendment. Even if short-barreled shotguns are protected by the Second Amendment, the registration requirement would nonetheless be constitutional because § 5861(d) is consistent with the historical tradition of firearm regulation under the second step of the *Bruen* analysis.

17

a.  *The plain text of the Second Amendment does not cover possessing an unregistered short-barreled shotgun.*

The plain text of the Second Amendment does not cover possession of an unregistered short-barreled shotgun for two reasons.   First, short-barreled shotguns are not "in common use" for lawful purposes and therefore fall outside the scope of the Second Amendment's protection.   Second, the registration requirement does not "infringe" any right to bear a short-barreled shotgun that might exist.

Under step one of the *Bruen* analysis, the court must determine whether the "plain text" of the Second Amendment "covers an individual's conduct."   597 U.S. at 24.   To determine whether it does, the court looks at the "normal and ordinary meaning" of the text, as "confirmed by the historical background of the Second Amendment." *Bruen*, 597 U.S. at 20.   The *Heller* Court looked to history to inform the meaning of the text because "it has always been widely understood that the Second Amendment codified a *pre-existing* right."   *Id.* (emphasis in original).   Sources including English history from the late 1600s, American colonial views from the founding, and post-enactment

18

legislative history illuminated "the public understanding" of the legal

text around the time it was enacted.    *Id.*   Those sources indicate that

the Second Amendment extends to arms "of the kind in common use."

*Miller*, 307 U.S. at 179; *see also Heller*, 554 U.S. at 627; *Bruen*, 597 U.S.

at 21.   It "does not protect those weapons not typically possessed by

law-abiding citizens for lawful purposes, *such as short-barreled*

*shotguns.*"   *Heller*, 554 U.S. at 625 (emphasis added).    In other words,

it does not protect "dangerous and unusual weapons."   *Bruen*, 597 U.S.

at 21 (quoting *Heller*, 554 U.S. at 627).

Under the textual analysis endorsed by *Heller* and *Bruen*, short-

barreled shotguns are not protected by the Second Amendment because

they are dangerous and unusual.   Courts have long recognized that

short-barreled shotguns are "uniquely attractive to violent criminals"

because they are "[m]uch easier to conceal than long-barreled shotguns

used for hunting and other lawful purposes" and "like a handgun, they

can be fired with one hand — except to more lethal effect."   *Johnson v.*

*United States*, 576 U.S. 591, 640 (2015) (Alito, J., dissenting).   This

Court has observed that short-barreled shotguns are "inherently

19

dangerous and generally lacking usefulness, except for violent and criminal purposes." *United States v. McLaurin*, 764 F.3d 372, 386 (4th Cir. 2014) (quoting *United States v. Fortes*, 141 F.3d 1, 6 (1st Cir. 1998)); *see also Cox*, 906 F.3d at 1185 (noting that a long gun with a shortened barrel is both dangerous, because "its concealability fosters its use in illicit activity," and unusual, "because of its heightened capability to cause damage.") (quoting *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010)).

Saleem's contention that short-barreled shotguns are "hardly unusual today" is contradicted by the data. *Br. of Appellant* 20, J.A. 180. The total number of registered short-barreled shotguns in 2017 — 146,098 — was a fraction of the pistols, revolvers, rifles, and shotguns manufactured in 2017 *alone* — over 8 million.[2] His assertion that short-barreled shotguns "were widely used during the 18th century" is similarly unsupported. *Br. of Appellant* 19. The fact that a similar

---

[2] Firearms Commerce in the United States, Annual Statistical Update 2021, Alcohol, Tobacco, Firearms, and Explosives, available at http://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download (last accessed May 9, 2024).

20

gun "exist[ed]" at the time of the Second Amendment's drafting and
ratification does not mean that it was in common use.   *Id.*   And in any
event, whether the weapon was in common use at the time of the
founding is not the relevant question.   *See Bruen*, 597 U.S. at 32
(noting that it was undisputed that "handguns are weapons 'in common
use' *today* for self-defense") (emphasis added).   Short-barreled shotguns
are not in common use for lawful purposes and thus are simply "not
eligible for Second Amendment protection."   *Heller*, 554 U.S. at 622.

Second, even if short-barreled shotguns were protected by the
Second Amendment, the registration requirement does not prevent a
person from possessing a short-barreled shotgun and therefore does not
"infringe" on the central right protected by the Second Amendment: the
right to armed self-defense.   Administrative burdens that stop far short
of disarming law-abiding citizens do not "infringe" the right to keep and
bear arms.   *See* Webster's 1828 American Dictionary of the English
Language (defining "infringe" as "[t]o break; to violate; to transgress"
and "[t]o destroy or hinder").   Section 5861(d) is not a blanket
prohibition on firearms, but rather codifies the National Firearm Act's

21

registration regime for certain types of firearms, including short-barreled shotguns. *See Cox*, 906 F.3d at 1179 (discussing regime). Individuals can legally own and transfer short-barreled shotguns if they follow the law's registration and taxation requirements. *See generally* 26 U.S.C. ch. 53. Saleem chose not to do so because he had unpaid traffic tickets that prevented him from getting a permit to buy guns. J.A. 594. The Second Amendment protects the right to bear arms for self-defense, but it does not protect an unfettered right to keep and carry "any weapon whatsoever in any manner whatsoever." *Heller*, 554 U.S. 626–27.

*Bruen* made clear that laws that regulate firearms licensing and or commerce do not violate the Second Amendment. *See Bruen*, 597 U.S. at 79–80 (Kavanaugh, J., concurring) (discussing laws that require licensing or training to buy a gun). Any minimal burden that the registration requirement imposes on the right to self-defense would be even less burdensome than other regulations that *Bruen* indicated do not infringe on that right. The majority explained that "nothing in [its] analysis should be interpreted to suggest the unconstitutionality" of the

22

"shall-issue" firearm-carry licensing schemes that existed in 43 states. 597 U.S. at 38 n.9.  "[T]hese shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding responsible citizens.'"  *Id.* (quoting *Heller*, 554 U.S. at 635).   And Justice Kavanaugh emphasized in his concurrence (joined by the Chief Justice) that states can constitutionally require license applicants to "undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements."  *Id.* at 80 (Kavanaugh, J., concurring).   If such administrative burdens on the carrying of firearms are permissible, then § 5861(d)'s requiring the registration of certain firearms — including short-barreled shotguns — is similarly constitutional because it does not "deny ordinary citizens their right" to self-defense.  *Id.* at 38 n.9 (majority opinion).

> b. *The registration requirement is consistent with the historical tradition of firearm regulation.*

Even if short-barreled shotguns were protected by the plain text of the Second Amendment, § 5861(d) would be constitutional because it is consistent with the historical tradition of firearms regulation. At the time of the Second Amendment's ratification, regulations of dangerous and unusual weapons were well-accepted. Under English common law, for example, "the offence of riding or going armed, with dangerous or unusual weapons, [was] a crime." 4 William Blackstone, *Commentaries on the Laws of England* 148–49. In the United States, too, courts have long acknowledged that a man commits "an offence at common law" when he "arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." *State v. Langford*, 3 Hawks 381, 383 (N.C. 1824). *See also Bruen*, 597 U.S. at 47 (identifying Colonial-era statutes in the same vein); *Heller*, 554 U.S. at 627.

Regulations targeting the concealment of those weapons that were *not* dangerous and unusual were also common. *See Bruen*, 597 U.S. at 59 ("The historical evidence from antebellum America" shows that

24

"States could lawfully eliminate one kind of public carry — concealed carry — so long as they left open the option to carry openly."); *Robertson v. Baldwin*, 165 U.S. 275, 281–82 (1897) (stating in *dicta* that "the right of the people to keep and bear arms (article 2) is not infringed by laws prohibiting the carrying of concealed weapons").   The National Firearms Act seeks to regulate weapons that are "likely to be used for criminal purposes," *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992), and is therefore consistent with the historical tradition of regulating — even banning— dangerous and unusual concealable weapons.

Laws that tax or regulate firearms sales also have close analogues in our nation's historical traditions.   "[C]olonial governments substantially controlled the firearms trade"   *Teixeira v. Cnty of Alameda*, 873 F.3d 670, 685 (9th Cir. 2017).   For example, "a 1652 New York law outlawed illegal trading of guns, gun powder, and lead by private individuals."   Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 Law & Contemp. Probs. 55, 76 (2017).   "A 1631 Virginia law required the recording not only of all

25

new arrivals to the colony, but also 'of arms and munitions.'"   *Id.*   And in the early 17th century, Connecticut banned residents from selling firearms outside the colony.   *Teixeira*, 873 F.3d at 685.   In a similar vein, Virginia provided that people were at "liberty to sell armes and ammunition to any of his majesties loyall subjects inhabiting this colony."   *Id.* at 685 n.18.

Meanwhile, other colonial governments "controlled the conditions of trade" in firearms.   *Id.* at 685.   State laws regulated "the manufacture, sale, [and] transport" of guns and ammunition in the 18th and 19th centuries.   Spitzer, *Gun Law History* at 74.   In 1814, for example, "Massachusetts required that all musket and pistol barrels manufactured in the state be first tested" before sale.   *Id.*   Likewise, in 1820, "New Hampshire created and appointed state gunpowder inspectors to examine every storage and manufacturing site."   *Id.*

Like these early laws, the National Firearms Act's registration requirement for short-barreled shotguns does not prohibit possessing or even transferring short-barreled shotguns.   Instead, the statute at issue merely imposes record-keeping requirements that ensure safety.

26

Although § 5861 is not identical to these historical statutes, *Bruen*

explained that the government need only identify a "historical

analogue, not a historical twin."    597 U.S. at 30 (emphases omitted).

And those statutes evince a similar purpose: regulating sales to ensure

public safety.    *See Bruen*, 597 U.S. at 29 (explaining that "how and

why" regulations "burden a law-abiding citizen's right to armed self-

defense" are relevant metrics for analogical reasoning).

Saleem's suggestion that there was not a "wide-scale historical

tradition requiring *registration* of arms before 1934" would require the

government to show a "historical twin."    *Br. of Appellant* 17.    The

analogues discussed above — laws regulating dangerous and unusual

weapons and laws regulating commerce and taxation of firearms — are

sufficiently similar to support the National Firearms Act's registration

requirement.    Historical sources show that dangerous and unusual

weapons and concealed weapons could be completely banned in the

colonial era because of safety concerns.    The registration requirement

arose out of a similar concern for safety.    *Thompson/Ctr. Arms Co.*, 504

U.S. at 517 ("It is of course clear from the face of the Act that the NFA's

27

object was to regulate certain weapons likely to be used for criminal purposes."). And the kinds of commercial regulations that have been common since the founding are closely analogous to the taxation and registration requirements of the National Firearms Act. Requiring the government to show that short-barreled firearms "had to be universally registered around 1791," *Br. of Appellant* 21–22, would turn the Second Amendment into the kind of "regulatory straitjacket" that *Bruen* explicitly rejected. 597 U.S. at 30. The registration requirement for short-barreled shotguns is consistent with the historical tradition of regulating dangerous and unusual weapons and sales of firearms and is thus constitutional.

## II.  The district court properly determined that the statute requiring registration of firearms is constitutional as to silencers.

### A.  Standard of Review

As stated above, this Court reviews Second Amendment challenges de novo. *Pruess*, 703 F.3d at 245.

## B.    Discussion

The district court properly denied Saleem's motion to dismiss the second count of the indictment because 26 U.S.C. § 5861(d)'s registration requirement for silencers does not violate the Second Amendment.   The plain text of the Second Amendment does not protect silencers for three reasons.   First, they are not "arms" within the meaning of the Second Amendment.   Second, even if they are, they are not in common use for lawful purposes.   Third, the registration requirement does not "infringe" any right to bear such arms.   Even if silencers do fall within the scope of the Second Amendment, the registration requirement is consistent with the historical tradition of firearm regulation and thus passes muster under *Bruen*.

> 1.    *The plain text of the Second Amendment does not cover*
> *possessing an unregistered silencer.*

The plain text of the Second Amendment does not cover possession of an unregistered silencer for three reasons.   First, silencers are not "arms" within the meaning of the Second Amendment.   Second, silencers are not "in common use" for lawful purposes and therefore fall outside the scope of the Second Amendment's protection.   Third, the

29

registration requirement does not "infringe" any right to bear a silencer

that might exist.

> a. *Silencers are not "arms" within the meaning of the Second Amendment.*

The plain text of the Second Amendment does not cover

possessing an unregistered silencer because silencers are not "arms" for

Second Amendment purposes.   The definition of a "firearm" that must

be registered in the National Firearms Act includes "any silencer,"

which means "any device for silencing, muffling, or diminishing the

report of a portable firearm, including any combination of parts,

designed or redesigned, and intended for use in assembling or

fabricating a firearm silencer."   26 U.S.C. § 5845(a)(7); 18 U.S.C.

§ 921(a)(25).   The Second Amendment right to bear "arms" applies to

"bearable arms," and "the most natural reading of 'keep Arms'" means

"to 'have weapons.'"   *Heller*, 554 U.S. at 582.   At its outer limits, the

Second Amendment may extend to items like magazines and

ammunition that are essential to exercising the right to keep and bear

arms.   *See, e.g.*, *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015),

*abrogated on other grounds by Bruen*, 597 U.S. at 1.   It does not,

however, automatically apply to anything that can be attached to a firearm but is not necessary to render the firearm operable.

Unlike a magazine, a silencer is not essential to making a gun operable. It is exclusively a means to reduce the sound omitted from an otherwise operable firearm. As the Tenth Circuit explained, a "silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')." *Cox*, 906 F.3d at 1186; *see also United States v. Hasson*, 2019 WL 4573424, at \*2-5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022) ("Silencers generally have no use independent of their attachment to a gun. They do not fire bullets on their own and do not contain a slide, trigger, firing pin, cartridge case, barrel, primer, or gunpowder.").

Nothing in *Bruen* suggests that silencers fall within the meaning of "arms" under the Second Amendment. *Bruen* spoke of "firearm" regulations, not the regulation of firearm accessories. 597 U.S. at 17. When *Bruen* noted, as *Heller* did before it, that the word "arms" covers some weapons not "in existence in the 18th century," *Bruen*, 597 U.S. at 28, it was contemplating modern advancements like automatic

31

handguns, not accessories like silencers.   The Second Amendment

"protects the possession and use of *weapons* that are in common use at

the time."   *Id.* at 21 (emphasis added); *see also id.* at 32.   A silencer is

not a weapon.

Saleem's assertion that a silencer is an arm because that term

includes "something worn, taken into hands, or used in any way for

offense or defense" interprets *Heller* too broadly.   *Br. of Appellant* 23–

24.   The Second Amendment may extend to items that are necessary to

exercising the "central component" of the Second Amendment, which is

the right to keep and bear arms for self-defense.   *Heller*, 554 U.S. at

599.   But it does not extend to accessories such as silencers that are not

essential to making a gun operable and have no connection to the right

to keep and bear arms for self-defense.   Nothing in *Bruen* suggests that

it does.   And *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011),

is not to the contrary.   That case held that a firing range was not

categorically unprotected because "[t]he right to possess firearms for

protection implies a corresponding right to acquire and maintain

proficiency in their use."   *Id.*   Silencers have no corresponding

32

connection to exercising the right of self-defense.    *Br. of Appellant* 25.

Even assuming a silencer could be useful in a home invasion by

protecting the homeowner from detection — a dubious proposition when

the homeowner could just as easily scare the intruder off by firing shots

— "usefulness" does not equate with "necessity."    *Ezell* found that

firing ranges were not just "useful" but "critical" to exercising the right

to self-defense.    651 F.3d at 704.    Silencers are not "critical," and they

are therefore not "arms," even under a definition that could include

accessories that are essential to the right of self-defense.    *Hasson*, 2019

WL 4573424, at *5 ("Although silencers may improve the usage of a

firearm, they are not necessary, and they are therefore not protected by

the Second Amendment.").

Equally unavailing is Saleem's assertion that silencers are "arms"

because they fall within the National Firearms Act's definition of

"firearms."    *Br. of Appellant* 22–23.    As the Supreme Court has

explained, "[t]he word 'firearm' is used as a term of art" in the National

Firearms Act.    *Thomson/Ctr. Arms Co.*, 504 U.S. at 507.    The

statutory term Congress chose in regulating dangerous devices has no

bearing on the historical inquiry of the meaning of "arm." The district court properly determined that silencers are "not firearms within the meaning of the Second Amendment but are instead firearm accessories that fall outside its protection." J.A. 186. It also properly determined that silencers are not "reasonably necessary accoutrements within the purview of the Second Amendment." J.A. 187.

> b. *Even if they are arms, silencers are not in common use for lawful purposes.*

Even assuming that silencers are Second Amendment "arms," they do not fall within the scope of the Second Amendment's protection because they are not in common use for lawful purposes but rather are "dangerous and unusual." *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 21. The historical record indicates that silencers were perceived as dangerous almost immediately after their invention and that they were quickly used to facilitate crimes. *See* Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 Law & Contemp. Probs. 231, 246–49 (2020). The silencer was invented in the early 1900s and patented in 1908. *Id.* at 246. "Objections to civilian use of silencers appeared almost

immediately." *Id.* By 1909, the first state, Maine, had banned the sale or possession of silencers, and New Jersey followed two years later. *Id.* at 247. The primary concern about unregulated possession of silencers was crime, from both typical criminals and hunters/poachers. *Id.* "From 1909 to 1936, at least fifteen states enacted silencer restrictions," including Arizona, Louisiana, Michigan, North Carolina, Pennsylvania, and Wyoming. *Id.* at 248 & n.123. Ultimately, the inventor of the silencer and his company "discontinued manufacturing silencers because of the popular impression that this invention was an aid to crime." *Id.* at 248 & n.125 (citing *Maxim Bans Gun Silencer*, N.Y. Times, May 8, 1930, at 27).

*Bruen* did not undermine *Heller*'s recognition that "dangerous and unusual weapons" fall outside the scope of the Second Amendment — in fact, it embraced it. *See Bruen*, 597 U.S. at 21, 47. Unlike the handguns at issue in *Bruen*, which are "indisputably in 'common use' for self-defense today," silencers remain both dangerous and unusual. *Id.* at 47. They are therefore not covered by the plain text of the Second Amendment. *E.g.*, *United States v. McCartney*, 357 F. App'x

35

73, 76 (9th Cir. 2009) (unpublished decision) (holding silencers are "not protected by the Second Amendment" because they are "not typically possessed by law-abiding citizens for lawful purposes"); *United States v. Ramadan*, 2023 WL 6634293, at *3 (6th Cir. Oct. 12, 2023) (unpublished decision) (on plain-error review, upholding registration requirement for silencers because no binding case law or "good evidence" showed that the statute was clearly unconstitutional), *United States v. Bolatete*, 977 F.3d 1022, 1036 (11th Cir. 2020) (on plain-error review, upholding registration requirement because neither the court of appeals nor the Supreme Court "has ever held that silencers are typically possessed by law-abiding citizens for lawful purposes").

Saleem suggests that silencers are "typically possessed by law-abiding citizens for lawful purposes" because gun owners use them to prevent hearing damages. *Br. of Appellant* 25. That silencers may have some lawful use does not negate their dangerous and unusual character in assisting criminals to commit crimes undetected. Saleem's home-invasion hypothetical illustrates the point. *Br. of Appellant* 25. Suppose the intruder had a firearm fitted with a

36

silencer.   He could shoot members of the household before the

homeowner realized he was armed with a weapon.   Because a primary

purpose of the silencer is to commit crimes undetected, they are

dangerous and unusual and are not protected by the Second

Amendment.

Saleem's reliance on the prevalence of registered silencers is

equally unavailing.   *Br. of Appellant* 27.   The total number of

registered silencers — 1.3 million as of April 2017 — is dwarfed by the

number of firearms produced in that year alone — over 8 million.[3]

Silencers are relatively uncommon compared to the kinds of arms that

are in common use for self-defense, such as handguns.   They are

unusual and dangerous and thus are not protected by the Second

Amendment.

_____

[3] Firearms Commerce in the United States, Annual Statistical Update 2021, Alcohol, Tobacco, Firearms, and Explosives, available at http://www.atf.gov/firearms/docs/report/2021-firearms-commerce-report/download (last accessed May 9, 2024).

> c. *The registration requirement does not "infringe" any right to bear a silencer.*

Even if silencers were protected by the Second Amendment, the registration requirement would not "infringe" on the right to keep and bear arms. As explained in Section I.B.2.a, § 5861(d) is not a blanket prohibition on silencers, but rather codifies the National Firearm Act's registration regime for silencers and other kinds of "firearms." *Bruen* explicitly endorsed regulatory regimes that require applicants for a handgun license to undergo a background test or pass a firearms safety course in order to "to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" 597 U.S. at 38 n.9. The registration requirement is a similarly minimal burden designed to ensure that dangerous devices are not put to criminal use. There is nothing specific to silencers that would turn the regulatory regime approved by *Miller* into an unconstitutional burden on the right to possess such devices. The minimal burden of registering a silencer does not "infringe" the right to bear arms.

38

2.    *The registration requirement is consistent with the historical tradition of firearm regulation.*

Even if silencers were protected by the plain text of the Second Amendment, § 5861(d) would be constitutional because it is consistent with the historical tradition of firearms regulation.   As explained in Section I.B.2.b, regulations — even bans — of dangerous and unusual weapons were well-accepted at the time of the Second Amendment's ratification.   And laws that tax or regulate firearms sales also have close analogues in our nation's historical traditions, including a 1631 Virginia law that required the recording of "arms and munitions" that arrived in the colony.   Spitzer, *Gun Law History in the United States and Second Amendment Rights* at 76.   Like these early laws, the National Firearms Act's registration requirement for silencers imposes a minimal record-keeping requirement to ensure that silencers are not used for criminal purposes.   Regulating sales of firearms to ensure public safety is in line with the historical tradition of firearm regulation, as is regulation and even banning of dangerous and unusual weapons.   The requirement that silencers be registered does not violate the Second Amendment.

39

Saleem's comparison to "tools making arms safer and more useful" that existed at the time of the founding draws the wrong analogy. *Br. of Appellant* 26. The more apt analogy is to dangerous and unusual weapons that facilitate crime, and there is an extensive historical tradition of regulating such devices. *See* Section I.B.2.b. Whatever the initial purpose of silencers was — even if they "initially served solely a sporting and safety purpose" as Saleem claims, *Br. of Appellant* 26 — the historical record provides ample evidence that they quickly became a tool of crime. And even assuming the silencer serves the useful function of preventing hearing damage, the registration requirement would still fit within the long and extensive history of commercial regulation of firearms. *See* Section I.B.2.b. A gun owner can still own a silencer to protect his hearing; he must simply comply with the minimal burden of registering it.

Saleem urges this Court to apply the rule of lenity to his conviction. Application of the rule of lenity is appropriate when a statute is ambiguous. *E.g., Thompson/Ctr. Arms Co.*, 504 U.S. at 518. Saleem does not contend that the statute at issue is ambiguous. And it

is not.   Saleem did not need to be able to "make determinations about whether the Second Amendment covered his homemade arms."   *Br. of Appellant* 28.   The National Firearms Act unquestionably required Saleem to register his homemade short-barreled shotgun and silencer, and he did not.   The rule of lenity does not apply to this unambiguous requirement.   In any event, Saleem's admission that he made homemade weapons because he was not able to get a gun permit belies his claim that he did not understand the regulatory framework for firearms.

## CONCLUSION

The National Firearms Act's registration requirement for short-barreled shotguns and silencers does not violate the Second Amendment.   The United States therefore respectfully requests that this Court affirm the district court's judgment.

41

## REQUEST FOR DECISION ON THE BRIEFS
## WITHOUT ORAL ARGUMENT

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this 10th day of May, 2024.

DENA J. KING
UNITED STATES ATTORNEY
s/ Julia K. Wood
Julia K. Wood
North Carolina Bar No. 51754
Assistant United States Attorney
227 West Trade Street
Carillon Building, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
Fax: (704) 344-6229
E-mail: julia.wood@usdoj.gov

42

# **CERTIFICATE OF COMPLIANCE**

1.      This brief has been prepared using Microsoft Word 2010, Century Schoolbook, 14 point typeface.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains   7,325   words.

        I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

                            s/ Julia K. Wood
                            Assistant United States Attorney
                            USAO Charlotte, NC

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served a copy of the above upon Defendant herein by serving his attorney of record, William Terpening, through electronic case filing.

This 10th day of May, 2024.

s/ Julia K. Wood
Assistant United States Attorney
USAO Charlotte, NC