# 23-4693

# United States Court of Appeals
## for the
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee*,

— v. —

ARBAB SALEEM,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT CHARLOTTE

# REPLY BRIEF OF APPELLANT

William R. Terpening
TERPENING LAW, PLLC
221 West 11th Street
Charlotte, North Carolina 28202
(980) 265-1700

*Counsel for Appellant*

COUNSEL PRESS   (800) 4-APPEAL • (JOB 810538)

## Table of Contents

|  | Page |
|---|---|
| Table of Authorities | ii |
| Argument | 1 |
| Conclusion | 8 |

i

## Table of Authorities

Page(s)

**Cases:**

*Atkinson v. Garland*,
   70 F.4th 1018 (7th Cir. 2023) .............................................................................. 7

*D.C. v. Heller*,
   554 U.S. 570 (2008) ..................................................................................... 1, 4, 5

*N.Y. State Rifle & Pistol Ass'n., Inc. v. Bruen*,
   597 U.S. 1 (2022) ................................................................................... *passim*

*United States v. Hill*,
   No. 3:23CR114, 2023 WL 8238164 (E.D. Va. Nov. 28, 2023) ................ 4

*United States v. Miller*,
   307 U.S. 174 (1939) ................................................................................. *passim*

*United States v. Neal*,
   No. 20 CR 335, 2024 WL 833607 (N.D. Ill. Feb. 7, 2024) .................. 4, 5

**Statutes & Other Authorities:**

U.S. CONST. amend. II ................................................................................... *passim*

U.S. CONST. amend. XIV .......................................................................................... 4

26 U.S.C. § 5861(d) ............................................................................................... 1, 6

American Special Ops, *M870 Shotgun*,
   https://www.americanspecialops.com/special-ops-
   weapons/remington-870-shotgun.php (last visited June 6,
   2024) .............................................................................................................. 3

SOFREP, *America's Military Shotguns – The 5 Shotguns in the
Armory*, https://sofrep.com/gear/americas-military-shotguns-
the-5-shotguns-in-the-armory/ (last visited June 6, 2024) ................. 2-3

Wikipedia, *Combat Shotguns*,
   https://en.wikipedia.org/wiki/Combat_shotgun (last visited
   June 6, 2024) ................................................................................................ 2

Wikipedia, *Sawed-off Shotguns*,
   https://en.wikipedia.org/wiki/Sawed-off_shotgun (last visited
   June 6, 2024) ................................................................................................2

iii

## **Argument**

Appellant, Arbab Saleem, replies in support of his appeal.

The government contends that "*Miller*, *Heller*, and *Bruen* foreclose Saleem's challenge to [26 U.S.C.] § 5861(d)." Resp., p. 14 (citing *United States v. Miller*, 307 U.S. 174 (1939), *D.C. v. Heller*, 554 U.S. 570 (2008), and *N.Y. State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1 (2022). That is not so. *Miller* is not applicable, and *Heller* and *Bruen* – as discussed in the opening brief – support Saleem's case.

*Miller* does not control, or even properly apply, to the issue anymore, because it was based on facts about the use of short-barreled shotguns that no longer are accurate and have changed since 1939, and reasoning that the Supreme Court no longer uses that focused on the *collective* militia instead of the *individual* in the analysis of whether the Second Amendment applies. Thus, *Miller* does not determine the outcome of this appeal for at least two reasons, and the analysis must be revisited under the current legal precedent, which has changed since *Miller*. The Court must now freshly analyze, under *Bruen*, whether short-barreled shotguns and silencers are protected.

1

First, the reasoning of *Miller* is inapplicable to the facts in the instant case. 307 U.S. at 178. *Miller*'s holding was that the Second Amendment did not protect the right to bear short-barreled shotguns because there was no evidence that they could preserve a well-regulated militia. *Id.* This was because, in 1939 (when *Miller* was decided), "it [was] not within judicial notice that this weapon is any part of the *ordinary military equipment* or that its use could contribute to the common defense." *Id.* (emphasis supplied). The use of short-barreled shotguns has changed since 1939.

Today, the United States Military commonly uses – and indeed prefers for certain situations, like urban combat – short-barreled shotguns. *See* Wikipedia, *Combat Shotguns*, https://en.wikipedia.org/wiki/Combat_shotgun (June 6, 2024); Wikipedia, *Sawed-off Shotguns*, https://en.wikipedia.org/wiki/Sawed-off_shotgun (June 6, 2024) ("Military vehicle crews use short-barreled combat shotguns as ancillary weapons," and "[i]n urban combat zones, military entry teams often use entry shotguns when breaching and entering doorways."). *See also* SOFREP, *America's Military Shotguns – The 5 Shotguns in the Armory*, https://sofrep.com/gear/americas-military-shotguns-the-5-shotguns-in-

2

the-armory/ (June 6, 2024).; American Special Ops, *M870 Shotgun*, https://www.americanspecialops.com/special-ops-weapons/remington-870-shotgun.php (June 6, 2024).[1] Therefore, it is no longer the case that there is not strong evidence that such firearms "contribute to the common defense," a point *Miller* relied on for its holding. 307 U.S. at 178. Since *Miller* greatly relied on the conclusion that it could not judicially notice that short-barreled shotguns were "any part of ordinary military equipment," its reasoning no longer applies. 307 U.S. at 178.

Similarly, as noted in the opening brief, the ATF reports that short-barreled shotguns are in broad use among civilians today. Op. Br., p. 20. The numbers in the ATF report show that short-barreled shotguns are in common use for lawful purposes. Applying the historical analysis of *Bruen*, *Miller*'s holding on short-barreled shotguns should no longer apply.

---

[1] Saleem certainly recognizes that Wikipedia and commercial blogs are not ideal factual support, but is informed, upon information and belief, that the United States Military uses short-barreled shotguns. However, he could not find documented corroboration, going either way, in official military publications or more traditional, preferred authorities. For this reason, the proper approach – if the Court agrees with Saleem's argument – would be to remand so that the district court can hear expert testimony confirming that the military uses short-barreled shotguns.

3

Second, and further to the foregoing, *Miller*'s reasoning was based on whether the Second Amendment encompassed a particular type of firearm on the basis that it could be used by the collective – the militia. 307 U.S. at 178-82 (lengthy historical analysis regarding type of arms required for militias). *Miller*'s reasoning and holding was not based on *individual* rights to bear arms. *Id.* However, *Bruen*, *Heller*, and other more recent cases than *Miller* changed that: "[I]n addition to rejecting means-end scrutiny to Second Amendment challenges, *Bruen* expanded *Heller* significantly by holding, 'consistent with *Heller* and *McDonald*, that the Second and Fourteenth Amendments protect an *individual's* right to carry a handgun for self-defense outside the home.'" *United States v. Hill*, No. 3:23CR114, 2023 WL 8238164, at *5 (E.D. Va. Nov. 28, 2023)(emphasis supplied)(citing 597 U.S. 1, 10). As the United States District Court for the Northern District of Illinois has explained, "[f]or many years, [the Second] Amendment was understood to protect a collective, not an individual, right to bear arms." *United States v. Neal*, No. 20 CR 335, 2024 WL 833607, at *2 (N.D. Ill. Feb. 7, 2024). "*Miller* focused on the meaning of the word 'Militia' in the Second Amendment, noting that the purpose of the Second Amendment was to 'assure the

4

continuation [of the Militia] and render possible the effectiveness of such forces.'" *Id.* (citing 307 U.S. at 178). However, *Heller* "concluded that the text and history of the Second Amendment actually supports an *individual* right to keep and bear arms…." *Id.* (citing 554 U.S. at 595, 626-27)(emphasis supplied). This is another reason *Miller's* determination that short-barreled shotguns are not protected no longer applies and must be revisited. After *Bruen*, the Court must perform the analysis under the *Bruen* standard, rather than simply applying *Miller* as precedent for the notion that short-barreled shotguns (and silencers) are not protected.

*Heller* does not impede Saleem's challenge to the registration requirement, either. The government points to the following statement in *Heller*, where *Heller* (in dicta) simply restates *Miller's* holding about short-barreled shotguns: "We therefore read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." 554 U.S. at 625. However, as discussed above and in the opening brief, short-barreled shotguns are now commonly, and lawfully, used by both the military and civilians. *Heller* simply recited,

5

without undertaking new analysis, what *Miller* said in 1939. The *Miller* rationale and analysis, as discussed above, is obsolete; the analysis should be performed under today's facts and under the *Bruen* standard.

And *Bruen* supports Saleem's position that use of short-barreled shotguns and silencers is protected by the Second Amendment and that the registration requirement is unconstitutional. *See* Op. Br., pp. 18-27. The opening brief applies the *Bruen* framework to both short-barreled shotguns and silencers. Since Saleem adequately walks through the *Bruen* analysis in the opening brief, he should not be repetitive and do so again in this reply brief.

Finally, the government makes the frivolous argument that "even if short-barreled shotguns were protected by the Second Amendment," registration requirements do not infringe on Second Amendment rights because they are not too onerous. Resp., p. 21. To so argue, the government seizes upon Justice Kavanaugh's concurrence – not anything in *Bruen's* majority opinion – to attempt to extrapolate that if administrative requirements for firearm ownership like fingerprinting and permissible, the entire 26 U.S.C. § 5861(d) registration scheme must not be unconstitutional. Resp., pp. 22-23. But that is not part of the *Bruen*

6

framework, which does not require Saleem to show that the registration requirement is too onerous and does not offer any benefit to the government from showing that it is not. Indeed, the government with this argument delves back into the kind of "means-end analysis" that *Bruen* expressly rejected. *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023)("*Bruen* leaves no room for doubt: text and history, not a means-end analysis, now define the controlling Second Amendment inquiry."). Under *Bruen*, Saleem's only burden is to show that the plain text of the Second Amendment covers the conduct. Op. Br., p. 14 (discussing 597 U.S. at 24). If so, the government must show that the regulation is consistent with the historical tradition of firearm regulation. *Id.* (discussing 597 U.S. at 28). That is the complete test – Saleem has satisfied his burden under it, and the government has not satisfied theirs, as the opening brief demonstrated. *Atkinson*, 70 F.4th at 1020 (quoting 597 U.S. at 17)("Accordingly, when the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'"). The Court should decline to

7

entertain the government's invitation to consider the added inquiry of whether the regulation is not too burdensome.

## **Conclusion**

The Court should overturn Saleem's convictions.

Respectfully submitted,

/s/ William R. Terpening
William R. Terpening
TERPENING LAW, PLLC
221 West 11th Street
Charlotte, North Carolina  28202
(980) 265-1700

*Counsel for Appellant*

8

# **Certificate of Compliance**

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [1,384] words.

   [   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Century Schoolbook*]; *or*

   [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  June 6, 2024                              /s/ William R. Terpening
                                                  *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 6th day of June, 2024 I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy E. Ray
OFFICE OF THE U.S. ATTORNEY
100 Otis Street, Room 233
Asheville, North Carolina  28801
(828) 271-4661

*Counsel for Appellee*


        /s/ William R. Terpening
        *Counsel for Appellant*